EMPIRE DRILL COMPANY v. T. J. ALLISON, Sheriff.

## *Conditional Sales—Registration.*

1. It is not sufficient to designate a contract by a certain name, in order to give it a particular effect. It must contain constituent elements for the purpose intended.

2. Where it appeared from the terms of a contract, that the intention was to appoint an agent to sell certain goods, although the contract is termed a conditional sale, the contract will be interpreted as making an agency, and need not be registered.

(*Brem* v. *Lockhart*, 93 N. C., 191, cited and approved).

CIVIL ACTION, pending in the Superior Court of IREDELL county, heard by consent, by *MacRae, Judge,* on a case agreed, at Chambers in Salisbury, on February 18th, 1886.

The plaintiffs brought this action to recover thirteen Empire Grain Drills, which they allege they had deposited with Baker & Woods, merchants in the town of Statesville, as their agents, to be sold for and on account of the plaintiffs, under and in pursuance of the agreement, whereof the following is a copy, which drills, the defendant, as sheriff, seized as the property of James B. Woods, successor in business to Baker & Woods, and refused upon demand, to surrender them to the plaintiffs:

"This agreement, made and entered into, this the 23rd day of February, 1884, by and between the Empire Drill Company, of Shortsville, Ontario county, New York, of the first part, and Baker & Woods, of Statesville, North Carolina, of the second part, witnesseth: That the said Empire Drill Company, for the consideration hereinafter mentioned, have this day bargained with the party of the second party, for the conditional sale of the following described property, viz.: Thirty Empire Drills, eight hoes eight inches, and grass seeder with hoes, each $78. To be shipped from Shortsville, New York, on or before August 15th, 1884, to be sold in the following territory, and no other, during the season of 1884; Iredell, Alexander and Wilkes counties, in North Carolina.

"1. Said party of the second part, hereby agrees, to settle with the Empire Drill Company, for all drills sold by them in Spring sales, on the 1st day of June, 1884, so far as is possible, and to make full settlements of all accounts made under this contract, on the 1st day of November, 1884.

"For all drills paid for in cash, and remitted, with exchange, to the party of the first part, on or before June the 1st., 1884, on Spring sales, and November 1st, 1884, on Fall Sales, a discount of five per cent. will be given from the above prices.

"3. Party of the second part also agrees, to sell all drills for cash, or to purchasers for notes, the notes to be drawn upon

banks furnished by party of the first part, and payable to their order, at some bank or express office, and endorsed by party of the second part, as follows: 'For value received, we hereby guarantee the payment of this note, and wave protest, demand and notice of non-payment thereof.' All notes to bear interest, and to mature not later than November 1st, 1885. The said party of the second part, shall be liable as guarantor, on all notes taken under this contract, whether their names be on such notes or not.

"4. If there be any drills on hand at the time of settlement, not exceeding one quarter of the whole number ordered, the party of the second part, shall pay for them in cash, or give a good approved note, due 188..., with interest from ............, or shall deliver said unsold drills at the railroad depot, when notified to do so, in as good condition as when received, free from all back charges for freight, storage, taxes, insurance, &c., as the party of the first part shall elect.

"5. Said party of the second part further agrees to order of the said Empire Drill Company, as many drills in addition to the above, as the trade in the territory herein mentioned will demand, and pay for them at the same prices and terms as above, and to pay for all extras, sold at retail prices, less 25 per cent; said drills and extras to be delivered on board cars at Shortsville or Baltimore, and party of the first part to pay all freight and charges on same to Statesville.

"6. The party of the second part also agrees, that so far as possible, they will make a full and complete settlement with purchasers at the time of the delivery of the drills to them, and to leave no drill with customers, without properly adjusting it for the work intended, and not become interested in the sale of any other drills.

"7. The party of the second part also agrees, to canvass the territory personally or by deputy, and sell said drills to actual purchasers, in good faith, in the territory as mentioned above, and no other, and to forfeit commission on each and every drill sold

in any other agents' territory, to the agent in whose territory said drill is sold.

"8. For full compensation for commissions, and in full payment for every duty performed as agent, the party of the second part may retain, at the settlement, from the proceeds of sales made by them in the above territory, all over the amount which the party of the first part is to receive by the terms of this contract, the said amount retained, to be in cash and notes, in the *ratio* proportionally as received from customers.

"9. It is hereby understood by and between the parties to this contract, that the title and ownership of all drills furnished by the party of the first part, shall be and remain in said Empire Drill Company, until paid for by the party of the second part, or sold for use to actual purchasers in good faith, and then all proceeds of sale of such drills, whether in cash, or notes, or accounts, are the property of said Empire Drill Company, to be remitted to them without delay, less the compensation as above mentioned. Said party of the first part, shall be liable for damages, if, by reason of accident or any cause, they should not be able to fill all the orders given by the party of the second part. The party of the first part, reserves to themselves the right to revoke this contract at any time, if the party of the second part shall fail to discharge any of the obligations entered into as above, or if the first party have reason to believe the second party unable to perform the same, and upon the revocation of this contract, all indebtedness of the second party shall then be due. The said Empire Drill Company, further agrees to furnish the party of the second part, a reasonable amount of printed matter, free of charge, except for transportation on the same."

The following instructions are made a part of this contract. "We will not pay for any newspaper advertising unauthorized by us, neither will we pay for any printing of any kind whatsoever, except that furnished from our office. We will indeavor to ship by the cheapest route, making the freight as low as possible, but will not be responsible for any charges, neither will we

agree to deliver drills at any specified rate of freights. We guarantee our goods against defect in workmanship and flaws, and will replace such parts as may prove defective from these causes."

The facts of the case were agreed upon by the parties, and submitted to the Court for its decision upon them, (a jury trial having been waived), as follows:

"1. That the drills in controversy were the property of plaintiff.

2. That they were delivered to Baker & Woods, under the written agreement set out in the pleadings, and that they came into the hands of James B. Woods, as successor to said firm, he having bought out the property, and assumed the obligations of said firm, he having been a partner in said firm of Baker & Woods, and that said written agreement was not registered.

3. That they were seized by the defendant as the property of the said James B. Woods, under the executions named in the pleadings.

4. That after the seizure, and before the commencement of this action, plaintiffs demanded possession of said drills, which was refused by the defendant."

The Court, upon consideration, being of opinion that the agreement mentioned did not constitute a conditional sale, gave judgment for the plaintiffs, and the defendant appealed to this Court.

*Mr. Geo. F. Klutz,* for the plaintiff.
*Mr. R. F. Armfield,* for the defendant.

MERRIMON, J., (after stating the facts). The statute, (The Code, §1275), provides, that "all conditional sales of personal property, in which the title is retained by the bargainor, shall be reduced to writing, and registered in the same manner, for the same fees, and with the same legal effect, as is provided for chattel mortgages."

Prior to the time when this statute became operative, "conditional sales" of personal property, that is, sales, whether the contract of sale was reduced to writing or not, in which it was stipulated, that although the property agreed to be sold, was placed in the possession of the bargainee, and used by him, the title to the same should not pass to him, but should remain in, and be retained by, the bargainor, until the bargainee should pay the price agreed to be paid for it, were upheld in this State, as valid against all persons claiming under the bargainee, without registration. Such sales became frequent, and a public grievance. They were the source of much fraud, and many fraudulent practices. The bargainee having possession of the property, and being the apparent owner, easily obtained credit on the faith of it, and when it became necessary to resort to it to satisfy his just debts, he would take shelter behind the bargainor, who retained the title. To cure this evil, the statute cited was passed. The bargainor really retained the title to the property so sold by him, only as a *security* for the purchase money due him for it. The Legislature, therefore, deemed it just and salutary, that he should be required to reduce the contract of sale to writing, and register the same, just as creditors are required to do, who take the lien created by chattel mortgages. *Brem* v. *Lockhart*, 93 N. C., 191.

The defendant insists that the agreement set forth in the complaint is, in substance and effect, a contract of conditional sale of the property in question, by the plaintiffs to Baker & Woods, therein named, and as it was not registered as the law required, the property was subject to be levied upon and sold as the property of J. B. Woods, who succeeded to the rights of the firm named. If this construction is well founded, the plaintiffs, it is conceded, cannot recover.

The agreement is not skilfully worded, nor does it set forth clearly the precise purpose of the parties to it, but, in our judgment, it appears with reasonable certainty from its scope, tenor, several parts, and terms, that it was their purpose to constitute

the firm of Baker & Woods, the agents of the plaintiffs, to sell their drills within the territory specified.

The mere recital in the agreement, that the plaintiffs "bargained with the party of the second part, for the *conditional sale*" of the property mentioned, did not necessarily imply such sale. Whether there was or not, depended upon the nature and legal effect of the agreement as a whole. It is not sufficient to designate a contract by a certain name to give it a particular effect —it must contain constituent elements for the purpose intended, as well as the name—the former are essential, the name is not.

The agreement does not, in terms, purport to convey the drills to Baker and Woods. The phrase, "have bargained with the party of the second part, for the conditional sale," is awkward, and to ascertain its meaning, must be taken in connection with other provisions bearing upon it, and thus viewed, it implies sales made for the plaintiffs in the way prescribed. It is obvious, that the general purpose of the plaintiffs, was not to sell the drills to the firm, to be used by them for practical purposes, but to put them on the market within a designated territory. Hence, the drills were to be shipped to the firm "to be sold"—not to be used by them, and the absolute title was to pass to the purchaser, whether he paid cash at once, or gave his note for the purchase money. The firm were required to account to the plaintiffs for all proceeds of sales of the property, whether cash, or notes taken, and the notes were to be taken payable to the plaintiffs; and all the cash, notes and accounts were to be theirs. The firm were to receive commissions as agents, in a way specified, and to account to other like agents, if they should sell drills outside of the territory designated.

It will be observed, that the firm were not required to pay for the drills shipped to them "to be sold," they were only required to be guarantors of the notes they might take for the plaintiffs, and they might, in the discretion of the plaintiffs, in a contingency specified, be required to pay for a limited number of drills,

but these stipulations were plainly intended to secure caution and industrious effort on the part of the firm, as agents.

These, and other less important provisions and stipulations, determined the character of the agreement, and show that it was intended to, and did in legal effect, constitute Baker & Woods agents of the plaintiffs to sell the drills in controversy.

The express reservation of title by the plaintiffs, in the ninth clause of the agreement, was cautionary, and intended to preclude the possible construction that a "conditional sale" to the firm was intended.

The Court properly interpreted the agreement. There is no error in the record, and the judgment must be affirmed.

No error. Affirmed.