## Richmond.

ADKINS & CO. v. CITY OF RICHMOND.

FEBRUARY 8, 1900.

1. CONSTITUTIONAL LAW—*When and How Constitutionality Raised.*—The unconstitutionality of a law or an ordinance of a municipal corporation need not be specially pleaded. The question may be raised by a general demurrer in the trial court, and the error assigned for the first time in this court.

2. APPEAL AND ERROR—*Jurisdiction—How Shown—Constitutional Law.*— The jurisdiction of this court must affirmatively appear from the record, but it does so appear when the court can see that the judgment of the lower court necessarily involved the constitutionality of some statute or ordinance, or drew in question some right under the Federal or State Constitution. Any proceeding which necessarily puts their validity in issue, whether it be by demurrer, plea, instruction, or otherwise, is sufficient to give this court jurisdiction of the case.

3. CONSTITUTIONAL LAW—*Interstate Commerce—Broker—License Tax.*—A resident of this State who solicits orders for the sale of goods by sample, solely for non-resident owners, and who forwards such orders and receives a commission for the sales negotiated by him, is a broker engaged in interstate commerce, and neither the State nor any municipal corporation can impose a license tax on him for such business. Congress alone can regulate such commerce, and the silence of Congress on the subject is equivalent to a declaration that such commerce shall be absolutely free. A license tax on such broker is not a police regulation, but a revenue measure, and imposes an unlawful burden on interstate commerce.

Error to a judgment of the Hustings Court of the city of Richmond, rendered February 23, 1899, on an appeal from a judgment of the Police Justice of said city.

*Reversed.*

The opinion states the case.

*S. S. P. Patteson,* for the plaintiff in error.

*H. R. Pollard,* for the defendant in error.

RIELY, J., delivered the opinion of the court.

The question involved in this case is the validity of the license tax imposed by the city of Richmond upon the plaintiff in error as a merchandise broker, and for the non-payment whereof he was prosecuted and fined.

It was objected by the counsel for the city that this court was without jurisdiction of the case, upon the ground that the record does not *specially* show that the tax was impugned on constitutional grounds. We are not aware of any requirement that it must specially appear in the record by some appropriate plea or other proceeding that the constitutionality of an act of the Legislature or an ordinance of a municipal corporation, or of any other matter involved in the litigation, was raised and decided by the lower court in order to call forth the jurisdiction of this court upon that ground. On the contrary, the constitutionality of a law has been repeatedly passed upon on a general demurrer to the pleading in the lower court, and even where the question was raised for the first time in the petition to this court for the writ of error. *Speer* v. *Com.,* 23 Gratt. 935; *McCready* v. *Com.,* 27 Gratt. 985; *Iverson Brown's Case,* 91 Va. 762; and *So. Express Co.* v. *Walker,* 92 Va. 59.

The jurisdiction of this court must affirmatively appear from the record, but it does so appear when the court can see that the judgment of the lower court necessarily involved the constitutionality of some statute or ordinance, or drew in question some right under the Federal or State Constitution. Any proceeding which necessarily puts their validity in issue, whether it be by a demurrer, plea, instruction, or otherwise, is sufficient to give this court jurisdiction of the case.

The authorities relied upon by the counsel for the city for his

contention were all, with a single exception, cases of the Supreme Court of the United States, where the rule invoked unquestionably prevails, but that is because that court by express statute has jurisdiction to review a judgment of a State court only when the record shows that some right under the Federal Constitution or authority of the United States was "specially set up or claimed" and denied by the State court. *Chicago and Northwestern R. Co.* v. *City of Chicago*, 164 U. S. 454; *Oxley Stave Co.* v. *Butler Co.*, 166 U. S. 648; U. S. Rev. Stat., sec. 709.

Upon the trial of the case, the plaintiff in error asked the court to instruct the jury as follows:

" If they shall believe from the evidence that Thomas Adkins, trading under the name of Thomas Adkins & Co., only carried on business as a resident sales agent for non-resident principals, and that his employment is exclusively confined to representing non-resident principals in the negotiations of the sales of goods which are in other States, then they must find for the defendant, Adkins"; but the court refused so to instruct the jury, whereupon a bill of exception was duly taken to its ruling.

While the instruction does not in terms refer to the commerce clause of the Federal Constitution, it is manifest that the defendant intended by the instruction asked for to invoke its protection, and that the court by refusing to give the instruction decided that the business of a resident sales agent, though limited exclusively to non-resident principals, was not within the protection of article 1, section 8, clause 3, of the Constitution of the United States. This was the question presented to and decided by the lower court against the contention of the defendant. The record, therefore, shows affirmatively that the validity of the tax was directly drawn in question, and that this court has jurisdiction of the case.

The evidence in the record shows that the plaintiff in error is a citizen and resident of the city of Richmond, Va.; that his occupation is soliciting orders in Richmond by personal appli-

cation, and by the exhibition of samples, solely for non-resident merchants, who are his principals; that his employment is confined exclusively to the negotiation of sales of goods, which are not in the State of Virginia, but in other States; that for the period for which the license tax was assessed against him, and for a long time prior thereto, he had not conducted any other business; that when he secures an order he reports it to his principal, who, if the sale and credit are satisfactory, fills the order by shipping the goods to the resident merchant; that no settlements are made through the agent, but by the resident merchant directly with the agent's non-resident principals, who remit to him the small commission which is his compensation for negotiating the sale; and that he has no storehouse or warehouse, but simply rents a room in the city of Richmond, in which he keeps his samples and conducts his correspondence.

The tax, which the defendant refused to pay, and for the non-payment whereof he was prosecuted and fined, was imposed on him under an ordinance of the city prescribing a license tax for the privilege of prosecuting the business of a broker. The ordinance does not define the term "broker," or explain the sense in which it was used. A *commercial broker* is defined in the revenue statutes of the State to be, among other things, one who negotiates the sale of merchandise without possession or control of it as commission merchants have of it in their business (Acts 1889-'90, ch. 244, sec. 64, p. 226); and a "broker," without special designation, is defined in the text-books to be "an agent employed to make bargains and contracts between other persons in matters of trade, commerce, or navigation, for a compensation commonly called brokerage." Story on Agency, sec. 28; and 4 Am. and Eng. Ency. of Law (2d ed.), 960.

Tested by these definitions, the defendant was conducting the business of a "broker" in the city of Richmond in violation of its ordinance, in that he had not paid, and refused to pay, the license tax required for the privilege of prosecuting such busi-

ness.   The question is, therefore, directly presented whether the ordinance under which the tax was assessed against him is, as respects the special and limited business of a broker followed by the defendant, a regulation of interstate commerce, and therefore void on account of its repugnancy to article 1, section 8, clause 3, of the Federal Constitution.

The Supreme Court of the United States, which is the authoritative and final arbiter of all questions arising under the Constitution of the United States, has repeatedly declared that "no State has the right to levy a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress." *Lyng* v. *Michigan*, 135 U. S. 165; and *Leloup* v. *Mobile*, 127 U. S. 640, 648, and cases there cited.   It follows, of course, that as a State cannot levy such a tax, a municipal corporation, a creature and agency of the State, cannot do so.

In *Brown* v. *Maryland*, 12 Wheat. 419, 444, in which a law of the State, requiring an importer to take out a license and pay $50 before he should be permitted to sell a package of imported goods, was declared unconstitutional, Chief Justice Marshall said: " But if it should be proved that a duty on the article itself would be repugnant to the Constitution, it is still argued that this is not a tax upon the article, but upon the person.   The State, it is said, may tax occupations, and this is nothing more. It is impossible to conceal from ourselves that this is varying the form without varying the substance.   It is treating a prohibition, which is general, as if it were confined to a particular mode of doing the forbidden thing.   All must see that a tax on the sale of an article which is imported only for sale is a tax on the article itself.   *   *   *    So a tax on the occupation of an importer is, in like manner, a tax on importation.   It must

add to the price of an article, and be paid by the consumer or by the importer himself, in like manner as a direct duty on the article itself would be made."

In *Welton* v. *Missouri*, 91 U. S. 275, 278, the same principle was announced. It was there said by Mr. Justice Field: " Where the business or occupation consists in the sale of goods, the license tax required for its pursuit is, in effect, a tax upon the goods themselves. If such a tax be within the power of the State to levy, it matters not whether it be raised directly from the goods, or indirectly from them through the license to the dealer; but, if such tax conflict. with any power vested in Congress by the Constitution of the United States, it will not be any the less invalid because enforced through the form of a personal license."

Again, in *Leloup* v. *Mobile*, 127 U. S. 640, 645, Mr. Justice Bradley said: " Ordinary occupations are taxed in various ways, and, in most cases, legitimately taxed. But we fail to see how a State can tax a business occupation when it cannot tax the business itself. Of course, the exaction of a license tax as a condition of doing any particular business is a tax on the occupation; and a tax on the occupation of doing a business is surely a tax on the business."

The principle above declared, that a State has no power to tax the agencies or instruments utilized in negotiating sales of property when it could not tax the property itself, has been broadly stated and uniformly adhered to in all the cases. It is as applicable to brokers as any other agency engaged in interstate commerce. It has been applied by the Supreme Court in many cases that have come before it. We cannot do more than refer to a few of the leading and most pertinent ones.

In *Robins* v. *Shelby County Taxing District*, 120 U. S. 489, it was decided that a statute of the State of Tennessee imposing a license tax on all drummers and persons offering for sale or selling goods, wares, or merchandise by sample was invalid with

respect to drummers for firms or individuals doing business in other States, upon the ground that such a tax was a regulation of interstate commerce. It was conceded in the opinion, as had been held in *Brown* v. *Houston*, 114 U. S. 622, that when goods, prior to their sale, have been sent from one State into another State to be sold, and the latter State has become the *situs* of the property, or when, in consequence of their sale, they have been brought into the latter State and become a part of its general mass of property within the State, they are liable to be taxed by it in the same manner as other property of a similar character, but that to tax the sale of such goods, or the offer to sell them, before they are brought into the State, was a very different thing, and clearly a tax on interstate commerce itself.

In that case the line was clearly drawn between the taxation of goods which have been sent into a State for sale after their arrival in the State and it has become their *situs*, and their taxation, or the taxation of the agency or instrumentality utilized in their sale and introduction into the State; their sale after their arrival in the State being domestic commerce, and their taxation legitimate, while their sale prior to their introduction into the State is interstate commerce, and their taxation or the taxation of the instrument or means of their introduction is unlawful, because such taxation is a direct burden upon commerce between the States, which, under the Constitution, cannot be imposed by the State without the assent of Congress, and the silence of Congress in respect to any matter of interstate commerce is equivalent to a declaration on its part that it shall be absolutely free. *Brennan* v. *Titusville*, 153 U. S. 289, 303; *Robins* v. *Shelby County Taxing District*, 120 U. S. 489, 493; and *Stoutenburgh* v. *Hennick*, 129 U. S. 141, 148. This distinction has not been departed from or qualified by any subsequent decision.

In *Asher* v. *Texas*, 128 U. S. 129, and in *Stoutenburgh* v. *Hennick*, 129 U. S. 141, the principle laid down in *Robins* v.

*Shelby County Taxing District, supra,* was again carefully considered and affirmed. .

In *McCall* v. *California,* 136 U. S. 104, an agent in the city and county of San Francisco, Cal., for the New York, Lake Erie and Western Railroad Company, a corporation having its principal place of business in the city of Chicago and operating a continuous line of road between Chicago and New York, was convicted and fined for not taking out the license and paying the tax of a railroad agency, as required by an order of the board of supervisors of the said city and county. His duties as such agent consisted in solociting passenger traffic in that city and county over the said railroad. His employment was confined exclusively to inducing persons in the State of California to travel from that State, over the line of the road he represented, to the city of New York. It was held that his business was an agency of interstate commerce, and that the order under which he was prosecuted was obnoxious to the commerce clause of the Constitution, and therefore invalid. " The object and effect of his solociting agency," said Mr. Justice Lamar, in delivering the opinion of the court, "were to swell the volume of the business of the road. It was one of the '*means*' by which the company sought to increase, and doubtless did increase, its interstate passenger traffic. It was not incidentally or remotely connected with the business of the road, but was a direct method of increasing that business. The tax upon it, therefore, was, according to the principles established by the decisions of this court, a tax upon a means or an occupation of carrying on interstate commerce, pure and simple."

In *Ficklen* v. *Shelby County Taxing District,* 145 U. S. 1, the court held that the plaintiffs in error, having taken out licenses as general merchandise brokers under the law imposing the tax, whereby they were authorized to do any and all kinds of commission business, were legally liable to pay the privilege tax in question, although their principals happened during the previous

year, as to the one party, to be wholly non-resident, and as to the other, largely such, as this fact might have been otherwise then and afterwards, as their business was not confined to the transactions of non-residents. " The tax," said Mr. Chief Justice Fuller, "was not laid on the occupation or business of carrying on interstate commerce, or exacted as a condition of doing any particular commission business; and complainants voluntarily subjected themselves thereto in order to do a general business." Distinguishing this case from that of *Robins* v. *Shelby County Taxing District*, he said: "In the case of Robins, the tax was held, in effect, not to be a tax on Robins, but on his principals; while here the tax was clearly levied upon complainants in respect of the general commission business they conducted, and their property engaged therein, or their profits realized therefrom."

And again: " No doubt can be entertained of the right of a State legislature to tax trades, professions, and occupations, in the absence of inhibition in the State Constitution in that regard; and where a resident citizen engages in general business subject to a particular tax, the fact that the business done chances to consist, for the time being, wholly or partially in negotiating sales between resident and non-resident merchants of goods situated in another State, does not necessarily involve the taxation of interstate commerce, forbidden by the Constitution."

In concluding the opinion in that case it was said: " What position they (the complainants) would have occupied if they had not undertaken to do a general commission business, and had taken out no license therefor, but had simply transacted business for non-resident principals, is an entirely different question, which does not arise upon this record." The particular question thus left open in that case is that which is directly presented in the case at bar.

The decision in the above case was thought by some to be a departure from the principles laid down in the other cases we

have referred to, but in *Brennan* v. *Titusville*, 153 U. S. 289, Mr. Justice Brewer, in delivering the opinion of the court in that case, said: " The case of *Ficklen* v. *Shelby County*, 145 U. S. 1, is no departure from the rule of decision so firmly established by the prior cases. At least, no departure was intended, though as shown by the division in the court, and by the dissenting opinion of Mr. Justice Harlan, the case was near the boundary line of the State's power. In that case the plaintiffs were in a general commission business, not acting for any particular firm within or without the State. Of the power of a State to impose license tax upon such a general business there can be no question."

In the case of *Brennan* v. *Titusville*, just referred to, the plaintiff in error was convicted of the violation of an ordinance of the city of Titusville, in the State of Pennsylvania, which required all persons canvassing or soliciting orders for goods, books, paintings, etc., to pay a license tax. As agent for his principal, who was a manufacturer of frames and maker of portraits in the city of Chicago, in the State of Illinois, Brennan solicited orders for pictures and picture frames in the city of Titusville, in the State of Pennsylvania, without procuring a license and paying the tax required by the ordinance. It was held, upon a review of the cases to which we have referred and of others, in accordance with the principles established by them, that the license tax imposed on the plaintiff in error was a direct burden on interstate commerce, and was, therefore, beyond the power of the State and void.

The case of *Hopkins* v. *United States*, 170 U. S. 578, ·was much relied upon as authority for the validity of the tax assessed against the defendant in the case before us. The relief sought in that case was based on an act of Congress entitled "An act to protect trade and commerce against unlawful restraints and monopolies," and the bill was filed against certain residents of the State of Kansas, who were members of a voluntary unincorporated association known and designated as the Kansas City

Live Stock Exchange. It was alleged that the members of the exchange had adopted for their government certain articles of association, rules and by-laws, which were in restraint of trade and commerce between the States. It was held otherwise; but it will be seen running all through the opinion of the court that stress was laid upon the fact that the business of the members was wholly concerned with buying and selling live stock after their arrival at Kansas City, and that the distinction made in the cases heretofore cited, between the sale or offer to sell in one State property which is situated in another State, and the sale of property after it has been brought into the State in which the sale is negotiated, was kept steadily in view—the one being interstate commerce and subject only to the regulation of Congress, and the other being domestic and subject to legislation by the State. Said Mr. Justice Peckham, in delivering the unanimous opinion of the court: " The selling of an article at its destination which has been sent from another State, while it may be regarded as an interstate sale, and one which the importer was entitled to make, yet the services of the individual employed at the place where the article is sold are not so connected with the subject sold as to make them a portion of interstate commerce, and a combination in regard to the amount to be charged for such services is not, therefore, a combination in restraint of that trade or commerce."

It appeared that the members of the exchange sent solicitors into other States to induce the consignment of stock to them for sale. In reply to the argument that these solicitors were engaged in interstate commerce, the court said: " The position of the solicitors is entirely different from that of drummers who are travelling through the several States for the purpose of getting orders for the purchase of property. It was said in *Robins* v. *Shelby County Taxing District*, 120 U. S. 489, that the negotiations of sales of goods which are in another State for the pur-

pose of introducing them into the State in which the negotiation is made is interstate commerce."

"But the solicitors for these defendants have no property or goods for sale, and their only duty is to ask or induce those who own property to agree, when they send it to market for sale, they will consign it to the solicitor's principal, so that he may perform such services as may be necessary to sell the stock for them, and account to them for the proceeds thereof. Unlike the drummer who contracts in one State for the sale of goods which are in another, and which are to be thereafter delivered in the State in which the contract is made, the solicitor in this case has no goods or samples of goods, and negotiates no sales, and merely seeks to exact a promise from the owner of property that when he does wish to sell he will consign to and sell the property through the solicitor's principal. There is no interstate commerce in that business."

The plaintiff in error in the case at bar did not take out license as a general merchandise broker, or in fact any license, because he did not consider that the business he was pursuing was subject to State or municipal taxation; nor was he engaged in a general commission business, but confined his business to selling or offering to sell by sample and personal application for nonresident principals exclusively goods belonging to them in another State, for the purpose of introducing them into the State in which the sale is negotiated. His business related wholly to interstate commerce. Upon the reasoning of the cases which have been cited, and in accordance with the principles enunciated in them, it must be held that the license tax imposed by the city upon the plaintiff in error for the privilege of pursuing his said business was a direct burden upon interstate commerce, and was, therefore, beyond the power of the city. The ordinance under which the tax was assessed was not in any manner the exercise of the police power reserved to the States, which, it is well settled, may be exercised by them (*Norfolk & Western R.*

*Co.* v. *Commonwealth,* 93 Va. 749, and the numerous cases therein cited and reviewed), but an ordinance adopted simply and wholly for the purpose of raising revenue.

The judgment of the Hustings Court must be reversed, the verdict of the jury set aside, and a new trial awarded the plaintiff in error.

*Reversed.*