STATE *v.* CALDWELL.

STATE v. CALDWELL.

(November 7, 1900.)

*Interstate Commerce—Licenses—Ordinances—U. S. Constitution, Art. I, Sec. 8—Constitutional Law.*

> An ordinance taxing one "engaged in selling or delivering" portraits or portrait frames, is not violative of the Constitution of the United States, Art. I, sec. 8, as applied to an agent who received "knock-down" pictures and frames from his firm in another State, and placed them together and delivered to customers previously obtained.

FAIRCLOTH, C. J., and CLARK, J., dissenting.

INDICTMENT against E. M. Caldwell, heard by Judge *Frederick Moore,* and a jury, at June Term, 1900, of GUILFORD Superior Court. From a judgment against defendant on a special verdict, the defendant appealed.

*Zeb. V. Walser,* Attorney-General, and *Scales & Scales,* for the State.

*Chas. M. Stedman,* for the defendant.

FURCHES, J. This is a prosecution for an alleged violation of an ordinance of the city of Greensboro. There was no objection or exception to the manner in which it was commenced, and it may be maintained if the defendant has violated the city ordinance (*State v. Higgs,* 126 N. C.,

1014), unless the ordinance is in contravention of the doc-
trine of interstate commerce, and therefore is unconstitu-
tional. The case comes to this Court on appeal of defend-
ant from the judgment of the Court below upon the following
special verdict: "That on the .... day of ......, 1900,
the defendant, being employed by the Chicago Portrait Com-
pany, a foreign corporation, of Chicago, Ill., came to Greens-
boro for the purpose of delivering certain pictures and frames
for which contracts of sale had previously been made by other
employes of the Chicago Portrait Company, who had pre-
ceded the defendant in Greensboro. That the defendant
went to the Southern Railway freight station, and took there-
from large packages of pictures and frames which had been
shipped to Greensboro, N. C., addressed to the Chicago Por-
trait Company, carried these packages to the rooms of the
defendant in the Woods House, a hotel in the city of Greens-
boro, and there broke the bulk, placing said pictures in their
proper frames, and from this point delivered the pictures
one at a time to the purchasers in the city of Greensboro.
The defendant had been engaged in this work two days when
arrested. That sec. 57 of the charter of the city of Greens-
boro, N. C., is as follows: 'That in addition to the subjects
listed for taxation, the aldermen may levy a tax on the fol-
lowing subjects, the amount of which tax, when fixed, shall
be collected by the collector of taxes, and if it be not paid on
demand, the same may be recovered by suit, or the articles
upon which the tax is imposed, or · any other property of the
owner may be forthwith distrained and sold to satisfy the
same, namely: * * * (21) Upon all subjects taxed
under Schedule B, chapter one hundred and thirty-six, Laws
of North Carolina, session of one thousand eight hundred and
eighty-three, not heretofore provided for, shall pay a license
or privilege tax of ten dollars. And the Board of Aldermen

shall have power to impose a license tax on any business car-
ried on in the city of Greensboro, not before enumerated
herein, not to exceed ten dollars a year.' The business men-
tioned in the ordinance following is not named in the char-
ter of the city, other than in the above section. That the fol-
lowing is an ordinance duly passed by the Board of Alder-
men of the city of Greensboro under and by virtue of the
foregoing section of said charter, and prior to any of the or-
ders being taken: 'Be it ordained by the Board of Aldermen
of the city of Greensboro, North Carolina: That every person
engaged in the business of selling or delivering picture
frames, pictures, photographs, or likenesses of the human
face, in the city of Greensboro, whether an order for the same
shall have been previously taken or not, unless the said busi-
ness is carried on by the same person in connection with some
other business for which a license has already been paid to
the city, shall pay a license tax of ten dollars for each year.
Any person engaging in said business without having paid
the license tax required herein, shall be fined twenty dollars,
and each and every sale or delivery shall constitute a separate
and distinct offense.' That neither the defendant, the Chi-
cago Portrait Company, nor any of the employes of the Chi-
cago Portrait Company, have paid the city any license tax.
If upon the foregoing facts, the Court shall be of opinion
that the defendant is guilty, the jury say that he is guilty;
otherwise, they say that he is not guilty." Upon this special
verdict the Court held that the defendant was guilty, and
the verdict was so entered, and the defendant fined $20.
From this verdict and judgment the defendant excepted, and
appealed to the Supreme Court.

The defendant assigns as ground of error: "(1) The
facts set out in the special verdict do not make the defend-
ant guilty of engaging in the business of delivering pictures

without first having obtained a license so to do, within the purview and contemplation of the ordinance of the city of Greensboro. (2) That, should defendant be held liable under the ordinance in controversy, said ordinance is unconstitutional, being in conflict with sec. 8 of Art. I of the Constitution of the United States, being an interference with, and an attempt to regulate, commerce among the States, and a burden upon the same." We will consider these assignments in the order in which they are stated; for, if the defendant has not been guilty of carrying on a business in violation of the city ordinance, then he is guilty of no offense—is not guilty —and there is nothing for the second assignment to rest upon.

It seems to us that a good way to test this exception is to divest our minds of the fact that the defendant was the agent of the Chicago Portrait Company, and to consider him as a citizen of Greensboro, who had bought these pictures, and had them shipped to him in the unfinished state they were. And if he had taken them to his house, opened them, assorted them, and put them together, and then sold and delivered them to parties in town, would he not have been a dealer engaged in selling and delivering pictures and picture frames in violation of the ordinance? We think he would, and would be guilty—would be, unless he is protected by reason of the unconstitutionality of the ordinance, as stated in the second assignment of error. And, it being claimed in this assignment that it involves a constitutional question—that it is in violation of "sec. 8 of Art. I of the Constitution of the United States, being an interference with, and an attempt to regulate, commerce among the States, and a burden upon the same"—it becomes an important question, and should be well considered. This has been well done, by arguments of the learned counsel, and the well-considered brief

STATE *v.* CALDWELL.

of defendant. It is contended in this brief that no State has a right to levy a tax on interstate commerce, and for this *Gloucester Ferry Co. v. Pennsylvania,* 114 U. S., 196, and *Crutcher v. Kentucky,* 141 U. S., 47, are cited. This position is true. And the defendant then contends that this ordinance is unconstitutional because it levies a tax on interstate commerce. For this position he cites quite a number of cases which he says sustain it. Among them, we will only mention those apparently most relied on. *Robbins v. Taxing Dist.,* 120 U. S.,480; *Brennan v. City of Titusville,* 153 U. S., 289; *Adkins v. City of Richmond* (Va.) 34 S. E., 967. The proposition of law contended for is undisputedly true—that a State can not tax interstate commerce. The trouble is, not in not being able to understand this rule of law, but in applying it. The defendant insists that *Brennan v. City of Titusville, supra,* is directly in point—is in every essential fact this case—and should control the opinion of the Court on this appeal. And it is in many respects like this case, but there is one material difference between that case and this, which marks the distinction. In that case the goods were shipped directly to the purchaser. In this case they were shipped by the Chicago Company to itself; in the city of Greensboro; and when they reached Greensboro the defendant, as the agent of the Chicago Company, received them from the railroad at its depot, carried them to its room in Greensboro, opened the boxes in which they were shipped, took out the pictures and picture frames, assorted them and put them together, and delivered them to the purchasers' in the city of Greensboro, and had been engaged in this work two days when arrested. If they had been completed and shipped directly to the parties for whom they were intended, this case would have fallen within the decision of *Brennan v. City of Titusville, supra;* and we should hold, as it was

held there, that it was an interference with interstate commerce, and that the defendant was not guilty. But to our minds there is a decided difference between this case and that. The contract to make and deliver these pictures was an executory contract, and no title passed by this contract. Tied. Sales, secs. 88, 89; *Drill Co. v. Allison,* 94 N. C., 548. If they had been completed in Chicago, and under contract shipped to the purchaser, the title would have passed to the consignee upon delivery to the railroad in Chicago; the railroad being deemed to be the agent of the consignee. *State v. Groves,* 121 N. C., 632; *Railroad Co. v. Barnes,* 104 N. C:, 25, and *Brennan v. City of Titusville, supra,* would have applied, as the tax would have been upon the commerce. But, instead of completing the pictures in Chicago, and shipping them to the parties who had contracted for them, they were shipped to itself (the Chicago Portrait Company), in Greensboro. This being so, no title ever passed from the Chicago Portrait Company until the pictures were put in the frames and delivered by the defendant. These pictures belonged to the Chicago Company when they were shipped from Chicago, and belonged to it when they got to Greensboro. And the question is, could the Chicago Portrait Company, because it was a foreign corporation, engage in the business of completing these pictures, and in selling and delivering them, in Greensboro, without becoming liable for a city tax for which its own citizens would be liable? It seems to us that it could not. This case seems to fall under the doctrine of *Emert v. Missouri,* 156 U. S., 296, and *Range Co. v. Carver,* 118 N. C., 328. There was no sale— no title passed from the Chicago Portrait Company—until the pictures were completed and delivered to the purchasers. We are, therefore, of the opinion that the defendant was engaged in the business of selling and delivering pictures and

picture frames in the city of Greensboro; and, as we are not able to see how the enforcement of this ordinance interferes with interstate commerce, the judgment of the Court below is affirmed.

CLARK, J. (dissenting). The orders for the portraits and frames were taken in Greensboro by the traveling agent of a Chicago firm. If the portraits made in Chicago in consequence of such contract had each been sent direct to the person for whom it was made, this would have been interstate commerce. This feature of the transaction is not changed by the fact that a batch of portraits was sent "knocked down" to Greensboro, the frames and portraits packed separately, and were by another agent of shipper, who came to Greensboro for that purpose from Chicago, put together, each portrait in its frame. This was simply an economical method of transportation. There is no new contract with the customer. There was no "breaking of bulk," in the legal meaning of the term; for each article, though shipped with others, kept its individuality. Each portrait could be of use only to the person for whom it had been made, and was as distinctly severed from the rest by that fact as if it had been sent in a separate cover. The only contract was that between the Chicago firm's agent, in the first instance, and the customer. The title does not pass until the picture is approved and paid for. This is the same case as *Robbins v. Taxing Dist.*, 120 U. S., 480, in which it was held that the business of offering for sale or selling goods to be shipped to the buyer from another State is interstate commerce. This is not the case of *State v. French,* 109 N. C., 722, or *State v. Wessell,* 109 N. C., 735, in which the goods were bought in another State, shipped here in bulk, and then by the buyer were sold to his customers. The sale by such buyer to his customers was a North Carolina business, and taxable. But

here the only "dealing" is between the Chicago house, through its agent, with a customer here, and the shipping of the identical article to an agent in Greensboro, whose sole duty is to complete the delivery upon payment of the purchase-money.

FAIRCLOTH, C. J.   I concur in the dissenting opinion.