## CIRCUIT COURT OF THE CITY OF RICHMOND

Irene C. Byrd
and Wert T. Byrd, Jr.

v.

Crosstate Mortgage
and Investments, Inc.

Case No. LW-3263-4

Percy Archer
and Phyllis Archer

v.

Sterling Mortgage Corp.

Case No. LW-3264-4

April 6, 1994

BY JUDGE RANDALL G. JOHNSON

These two cases, which involve similar facts and questions of law, are before the court on each defendant's demurrer and plea of the statute of limitations. In *Byrd v. Crosstate*, plaintiffs' motion for judgment alleges that Crosstate acted as a mortgage broker in securing a consumer loan for the plaintiffs in the amount of $14,000. The broker's agreement provided for the broker's receiving a fee, which was to be paid out of the prepaid finance charge, of not more than 2% of the principal amount of the loan. In reality, however, Crosstate received a fee of 8.9% of the loan, which consisted of the $280 disclosed fee, plus an additional $971.57, the payment of which was not disclosed to, or known about, by the plaintiffs. The

additional fee was comprised partly of discount points and a service charge, which plaintiffs ostensibly paid to the lender, and partly of an additional $551.57 paid by the lender to the broker. Plaintiffs allege, in separate counts, that by collecting these additional fees without making appropriate disclosure to the plaintiffs, Crosstate committed fraud, breached its contract with plaintiffs, violated Virginia's usury laws, and violated the Virginia Consumer Protection Act.

In *Archer v. Sterling*, the motion for judgment alleges that plaintiffs contacted Sterling for the purpose of obtaining a consolidation loan. Such a loan was arranged, and at closing, the loan documents disclosed a broker's fee to Sterling of $396. When plaintiffs objected to the fee, Sterling, through the closing attorney, agreed to reduce its fee to $198. Plaintiffs then signed the closing papers, including a broker's agreement which provided for the reduced broker's fee. Sterling, however, actually received a fee of $1,146.41, which consisted of the $198 broker's fee, the discount points and service charge which plaintiffs ostensibly paid to the lender, and an additional $354.41 paid directly to Sterling by the lender. Only the broker's fee of $198 was disclosed to the plaintiffs. As in the other case, plaintiffs claim fraud, breach of contract, violation of the usury laws, and violation of the Virginia Consumer Protection Act.

Each defendant has filed a demurrer and a plea of the statute of limitations. Both demurrers, as well as Sterling's statute of limitations plea, are directed at all counts of the motions for judgment. Crosstate's statute of limitations plea is directed at the Byrds' fraud and Virginia Consumer Protection Act claims only. For the reasons which follow, defendants' pleas of the statute of limitations with regard to plaintiffs' claims under the Virginia Consumer Protection Act will be sustained. Otherwise, defendants' pleas and demurrers are all overruled.

## I. *Statute of Limitations*

The court heard oral argument on these two cases together. At oral argument, counsel for both defendants conceded that their statute of limitations pleas on plaintiffs' fraud counts were premature, since a decision on those pleas will depend on the factual determination of when plaintiffs knew, or should have known, about the alleged fraud. Accordingly, the pleas as to the fraud counts will be overruled at this point without prejudice to either defendant's renewing such plea if such action becomes appropriate.

With regard to the counts alleging breach of contract and usury, only defendant Sterling raises a plea of the statute of limitations, and even Sterling made no argument in support of that aspect of its plea either in its written brief or at oral argument. The plea is overruled.

The Archers allege a written contract dated August 24, 1989. Suit was filed on November 29, 1993. Since the statute of limitations for claims arising out of written contracts is five years (Va. Code § 8.01-246), the Archers' breach of contract claim is timely.

Similarly, the Archers' usury claim is also not time barred. Virginia Code § 6.1-330.57 allows a suit based on usury to be filed "within two years from (i) the date of the last scheduled payment, or (ii) the date of payment in full, whichever is earlier . . . ." Here, the last scheduled payment for the Archers' loan is not until the year 2004, and there is no evidence that the loan has already been paid off. Obviously, then, the usury claim is also timely.

Finally, at least with regard to defendants' statute of limitations pleas, defendants claim that plaintiffs' actions are not timely under the Virginia Consumer Protection Act, Va. Code § 59.1-196 *et seq*. The court agrees.

The Virginia Consumer Protection Act contains no limitations period. Thus, it is governed by Virginia's "catch-all" limitations section, § 8.01-248. That section provides for a limitations period of one year. While plaintiffs argue that it is really defendants' fraud which constitutes the violations of the Consumer Protection Act and, thus, that the fraud statute of limitations should apply, that argument is without merit. What plaintiffs' allegations of fraud do allow are causes of action for fraud. They do not allow a "borrowing" of the fraud limitations period for any other cause of action. Defendants' plea in this regard will be sustained, and plaintiffs' respective counts under the Virginia Consumer Protection Act will be dismissed.

## II. *Demurrers*

### A. *Fraud*

Defendants basically make two arguments in support of their demurrers to plaintiffs' fraud counts. First, defendants argue that they had no fiduciary duty to their respective customers, and thus, the conduct complained of by plaintiffs is not actionable. Second, defendants assert that even if they breached a duty to plaintiffs, no harm occurred since plaintiffs agreed to the overall loan packages even if specific components of those packages were not revealed. The court rejects both arguments.

In the recent case of *Van Deusen v. Snead*, 247 Va. 324 (1994), the Supreme Court once again set forth what should now be common knowledge to anybody holding himself, herself, or itself out as a broker:

> "An agent is a fiduciary with respect to the matters within the scope of his agency." *H-B Partnership v. Wimmer*, 220 Va. 176, 179, 257 S.E.2d 770, 773 (1979) (real estate agent employed by purchaser to buy property). We have repeatedly applied the following rule:
>
> "[A] broker owes his principal the duty to use utmost fidelity to him and must disclose to him all facts within the broker's knowledge which may be material to the transaction, or which might influence the principal in deciding upon a course of action. *Va. Real Estate Comm. v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125-26 (1983); *Metro Realty v. Woolard*, 223 Va. 92, 98, 286 S.E.2d 197, 200 (1982); *Owen v. Shelton*, 221 Va. 1051, 1054, 277 S.E.2d 189, 191 (1981)."
>
> *Burrus v. Green Auction Co.*, 228 Va. 6, 10, 319 S.E.2d 725, 727 (1984); *accord Duncan v. Barbour*, 188 Va. 53, 61-62, 49 S.E.2d 260, 264 (1948); *Mitchell v. Hughes*, 143 Va. 393, 403, 130 S.E. 225, 228 (1925).

Here, each defendant held itself out as a broker in the business of obtaining mortgage loans. Specifically, the agreement signed by the Archers and Sterling stated that "Sterling Mortgage Corporation is an independent *broker* and is not an employee, agent, or part owner of any lender to whom my/our application may be referred." (Emphasis added.) In addition, under the signature line for Sterling is the word "Broker."

Similarly, while Crosstate's contract for services does not contain the word "broker" as clearly or forcefully as does Sterling's, Crosstate is nonetheless a broker. Crosstate's fee agreement, signed by the Byrds, includes the following language:

> The undersigned does hereby authorize Crosstate Mortgage and Investments, Inc., hereinafter referred to as CMI, to take necessary action to *negotiate and/or obtain financing on his/her behalf* . . . .

(Emphasis added.)

This sounds like a broker to this court. *See Adkins v. Richmond*, 98 Va. 91, 94, 34 S.E. 967 (1900) ("[A] broker, without special designation, is

defined in the textbooks to be an agent employed to make bargains and contracts between other persons in matters of trade, commerce, or navigation, for a compensation commonly called brokerage."); Black's Law Dictionary 174 (5th ed. 1979) (A broker is "[a]n agent employed to make bargains and contracts for a compensation."). Moreover, the same agreement specifically refers to the fee to be paid to Crosstate as "an origination fee or *broker* fee." (Emphasis added.) In light of these facts, and in light of the Supreme Court's clear holdings regarding a broker's duty to its principal, defendants' assertions that they are not fiduciaries are utterly without merit.

Also, without merit are defendants' arguments that even if they breached a fiduciary duty in not disclosing their real fees, plaintiffs were not harmed and, thus, have no causes of action. This is true, say defendants, because each pair of plaintiffs knew the total cost of their loan, so neither pair paid any more than what was agreed. This argument misses the point.

Homeowners normally employ agents to sell their homes. Those agents are fiduciaries. If an agent receives an offer, that offer must be communicated to the principal, the homeowner. If not, the agent has breached his/her/its duty. Obviously, such an agent may not receive an offer of $100,000, tell the principal the offer was for $50,000, and then defeat an action by the principal by saying the principal agreed to accept $50,000. The situation is no different here.

It is true that the plaintiffs agreed to the fees set out in their respective closing papers. We do not know, however, that they would have agreed to those fees if they had known that defendants were receiving more in fees than defendants said they would receive. Perhaps plaintiffs would have insisted on lower total fees. Perhaps they would have taken their business elsewhere. Perhaps they would have gone to a broker who did not look to receive the "kickbacks" about which plaintiffs complain. Indeed, each motion for judgment alleges that plaintiffs would *not* have entered into the loan if they had known the true facts. On demurrer, those allegations are taken as true. The demurrers to the fraud counts are overruled.

## B. *Breach of Contract*

Defendants' demurrers to plaintiffs' breach of contract claims are based on defendants' assertion that plaintiffs fail to state exactly how their contracts were breached. This is simply not true.

Each motion for judgment specifically alleges that the subject defendant agreed in writing to a specified fee for its services and then collected a fee in excess of the one agreed upon. In fact, that is what these cases are all about. A cause of action for breach of contract is clearly made out.[1]

## C. *Usury*

Finally, defendants demur to plaintiffs' claims under Virginia's usury laws, again on two grounds. First, defendants contend that only lenders, and not brokers, are covered by the usury statutes. Second, defendants argue that even if the usury laws do apply, the facts of these cases show that their fees did not exceed the maximum allowed by those laws. These arguments, too, are wholly lacking in merit.

Defendants' first argument is easily and completely refuted by Va. Code § 6.1-330.57, which provides, in pertinent part:

> A. If interest in excess of that permitted by the applicable statute is paid upon any loan, the person paying may . . . recover from *the person taking or receiving such payments* . . . .

(Emphasis added.)

Since, for usury purposes, it is "well-settled that any charge which cannot be attributed to either principal or to an allowed charge for collateral service is considered interest," *see Garrison v. First Federal Savings and Loan*, 241 Va. 335, 342, 402 S.E.2d 25 (1991), plaintiffs' claims in these cases are properly brought against these defendants.[2]

Nor are defendants' arguments concerning the facts entitled to any weight. These cases are before the court on demurrer. The allegations in the motions for judgment are accepted as true. The Byrds allege that Crosstate collected a broker's fee of 8.9%. The Archers allege that Sterling collected a broker's fee in excess of 5.7%. The law allows a broker's fee

---

[1] The Court notes that defendants also demur to plaintiffs' claims for punitive damages in that such damages are not appropriate in contract cases. Plaintiffs' requests for punitive damages, however, are not contained in the breach of contract counts, but are part of the general *ad damnum* clauses located at the very end of the motions for judgment. Since punitive damages may be appropriate in plaintiffs' fraud claims, they cannot be taken out of the case now.

[2] Emphasis in the quote from *Garrison* is added. *Garrison* also makes it clear that any charge *in excess* of the charges allowed by statute is to be considered interest for purposes of the usury laws, even if the fact of the charge itself is disclosed. 241 Va. at 343.

of only 5%. What plaintiffs can or cannot prove is left for another day. A cause of action for usury, however, is stated.[3]

## Conclusion

For all of the foregoing reasons, defendants' pleas of the statute of limitations are sustained with regard to plaintiffs' claims under the Virginia Consumer Protection Act. In all other respects, defendants' pleas and demurrers are overruled.

---

[3] Actually, the Archers' motion for judgment does not state the fee received by Sterling as a percentage. However, the motion for judgment does allege a fee of $1,146.41, and the broker's agreement, a copy of which was attached to and filed with the motion for judgment, shows a loan of $19,800. Thus, a fee of 5.79% is at least reasonably inferred from the motion for judgment. *See Van Deusen v. Snead, supra* (The court must accept as true those facts which are "expressly alleged, those which fairly can be viewed as impliedly" alleged, and those which may be fairly and justly inferred from the facts alleged.").